**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 19, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROBERT FISHER and MARY
FISHER,

      Plaintiffs-Appellants,

v.

THE CITY OF LAS CRUCES, a
municipality organized pursuant to the
laws of the State of New Mexico, and
its subsidiary, the Las Cruces Police
Department; OFFICER JOANN
CHRISTINE SCHNELL, a law
enforcement officer employed by the
Las Cruces Police Department,
individually and in her official
capacity as a police officer; OFFICER
ROBERTO GUTIERREZ, a law
enforcement officer employed by the
Las Cruces Police Department,
individually and in his official
capacity as a police officer;
OFFICERS JOHN/JANE DOE, 1-5,
law enforcement officers employed by
the Las Cruces Police Department,
individually and in their official
capacities as police officers,

      Defendants-Appellees.

No. 07-2294

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-07-00421-RB-CEG)**

---

Dennis W. Montoya, Montoya Law, Inc., Rio Rancho, N.M., for Plaintiffs-Appellants.

Jared Abrams, City of Las Cruces, N.M., for Defendants-Appellees.

Before **BRISCOE, TYMKOVICH,** and **GORSUCH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

After Robert Fisher mistakenly shot himself twice, his wife called 911. Two officers responded to the call. Fisher alleges, despite the seriousness of the gunshot wounds to his bicep and stomach, the officers handcuffed him in a painful manner that exacerbated his injuries. Fisher filed suit, claiming the officers violated 42 U.S.C. § 1983 by employing excessive force in violation of his Fourth Amendment rights.

The district court disagreed and granted summary judgment to the officers on qualified immunity grounds. The court concluded that, although the force used by the officers was excessive, the resulting injuries themselves were insufficient as a matter of law under our precedent to permit recovery.

Taking Fisher's allegations as true, we conclude a reasonable jury could find his injuries sufficient to satisfy our minimal threshold injury requirement. Accordingly, we REVERSE.

## I. Background

After consuming at least two doses of Xanax, an anti-anxiety prescription medication, and the better part of a pint of vodka, Robert Fisher passed out in his backyard.[1] When he awoke, he began to hallucinate that a large animal was threatening him. Fisher ran inside, retrieved a 9 millimeter handgun, and returned to the backyard to confront the illusion. Staggering and delirious, Fisher instead accidentally shot himself in the stomach. As he fell to his knees, his gun discharged again and a second bullet struck him in the left bicep.

Fisher's wife, Mary Fisher, was inside the house and heard Fisher's cries for help. She called 911 to report that her husband had shot himself. In response to the operator's question whether Fisher had threatened her with the gun, she answered "No, not me." Aplt. App. 65. She also told the operator that her husband had said he was "tired of living" and that he "obviously had too much to drink." *Id.* at. 67. While talking to the operator, Mary Fisher walked outside, apprehended the gun, and placed it in the kitchen.

The 911 operator broadcast a call regarding the incident. Officers Joann Schnell and Roberto Gutierrez, members of the Las Cruces police department, responded. According to the officers, dispatch reported either that an individual had shot himself, or that an individual was suicidal and shots had been fired.

---

[1] We recount the facts in the light most favorable to the summary judgment non-movant.

- 3 -

When the officers arrived at the Fishers' residence, Mary Fisher was standing outside the front door to greet them. She informed the officers no one else was at the residence aside from herself and her husband, and her husband no longer had the gun. She showed them the gun in the kitchen.

The officers ordered Mary Fisher to stay in the house and walked with their guns drawn into the backyard. They found Fisher kneeling in a crouched position, with his shirt off, and his fresh wounds clearly visible. With Officer Gutierrez's gun trained on Fisher, Officer Schnell frisked him for weapons and found none. In response to the officers' questions, Fisher confirmed that the only other person around was Mary Fisher. Fisher then showed his wounds to the officers.

At that point, Officer Gutierrez returned to the house to retrieve the gun, leaving Officer Schnell alone with Fisher. Officer Schnell sought to provide some medical assistance to Fisher by pressing Fisher's discarded shirt to his stomach and bicep in an effort to staunch the bleeding. Fisher's bicep was, as he later related, "quickly swelling into the size of a grapefruit," and he told Officer Schnell he thought one bullet still might be lodged in his body. Aplt. App. 77.

Returning to the yard with Fisher's gun in his possession, Officer Gutierrez ordered Fisher to lay flat on his wounded stomach and spread his arms over his head. Fisher did not comply, telling the officers that he could not do so because of his injuries. Officer Gutierrez repeated his orders and Fisher again did not

- 4 -

comply. Despite Fisher's resistance, Officer Schnell then proceeded to handcuff Fisher behind his back, a process that necessitated, because of the swelling to Fisher's bicep, that she place her knee into Fisher's back in order to leverage his arms behind his body.

Fisher begged not to be handcuffed in this manner. As he later reported: "I protested the handcuffing behind my back. I told the officers that it was not necessary and to consider my wounds. . . . I begged her not to handcuff me behind my back." Aplt. App. 77. The manner in which he was handcuffed—with a knee to his back, placing pressure on his stomach wound, and with his arms brought behind his body—caused, in Fisher's words, "excruciating pain. It felt like my bicep was tearing." *Id.* at 78.

In due course, Fisher brought suit under 42 U.S.C. § 1983, contending that Officers Schnell and Gutierrez used excessive force in violation of his Fourth Amendment rights. The officers moved for summary judgment on the basis of qualified immunity. The district court granted their motion and entered a final judgment against Fisher. In doing so, the district court agreed with Fisher that the force used by the officers was excessive, but held that his claim was precluded as a matter of law because he had not proffered sufficient evidence that he suffered a non-de minimis injury.

## II.  Discussion

As always, we assess the district court's grant of summary judgment de novo, and view the facts, and all reasonable inferences those facts support, in the light most favorable to the non-movant.  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008).  But, "[b]ecause of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions."  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion.  The plaintiff must demonstrate that on the facts alleged the defendant violated his or her constitutional or statutory rights.  In addition, the plaintiff must show that the right was clearly established at the time of the alleged unlawful activity.  *Pearson v. Callahan*, 129 S. Ct. 808, 815–16, 818 (2009).  "In short, although we will review the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity."  *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007) (citation omitted).

Beginning in *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court required us to consider each of the plaintiff's burdens in a sequential fashion:

first to consider whether a right had been violated, and then—and only then—to determine whether the right was clearly established at the time of the alleged violation. *Id.* at 200. The Court recently reconsidered this approach and retired the "rigid order of battle." We now use our discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 817–18; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). The Court offered many factors for our consideration in deciding when and how to exercise this discretion. But the question whether to proceed directly to the second prong arises, of course, only when qualified immunity is *granted*. To secure the *denial* of qualified immunity, a plaintiff still bears the burden of establishing both *Saucier* prongs. And that is the situation in which we now find ourselves.

We thus proceed to analyze his appeal addressing both prongs.

*A. Constitutional Violation*

The first question is whether Fisher has demonstrated a reasonable jury could find that the officers violated his Fourth Amendment rights by applying excessive force. As a threshold matter, we agree with the district court that the initial decision to handcuff Fisher was not unreasonable. Rather, the issue here is whether in these circumstances the *manner* in which the officers handcuffed Fisher, forcibly behind his back while he suffered from gun shot wounds,

constituted excessive force. "If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force." *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007).

Our recent cases guide this analysis. In *Cortez* we explained that in a handcuffing case "to recover on an excessive force claim, a plaintiff must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional." *Id.* at 1129 n.25.

We first lay out relevant background principles, and then address each element in turn.

*1. Background Principles*

The Fourth Amendment protects individuals from "unreasonable . . . seizures," U.S. Const. amend. IV, and courts have long recognized that the reasonableness of a seizure depends not just on why or when it is made, but also on how it is accomplished. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The touchstone of the reasonableness inquiry in an excessive force claim, as in any other claim arising out of the Fourth Amendment, is whether the officers' actions are *objectively unreasonable*. The inquiry focuses not on the officers' particular motivations, nor on the arrestee's subjective perception of the intrusion, but on

"whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. at 397.

In considering this question, we are mindful that the Fourth Amendment "does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (citation omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (citation and quotation marks omitted). And we take seriously that this "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Though the Fourth Amendment's reasonableness inquiry notoriously eludes easy formula or bright line rules, *see Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (observing that "generally no bright line exists for identifying when force is excessive"), the Supreme Court has delineated three, non-exclusive factors relevant to our excessive force inquiry: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

In recently applying the balancing factors of *Graham*, the Supreme Court recognized that handcuffing was an appropriate response to officer-safety concerns even during investigative detentions. *Muehler v. Mena*, 544 U.S. 93, 100 (2005). But the justifiable initial use of handcuffs can become unreasonable if other factors, such as prolonged duration, "affect the balance of interests under *Graham*." *Id.*

2. *Use of Force*

Assessing the *Graham* factors—and the overall objective reasonableness of the situation—we conclude that a reasonable jury could (even if it need not) find the force used by the officers in their handcuffing of Fisher greater than would have been reasonably necessary to effect a lawful seizure.

First, any crime the officers reasonably could have suspected Fisher of having committed was a petty misdemeanor. The only criminal ordinance covering Fisher's conduct, or at least the only one the parties have suggested might apply, is the firing of a firearm within city limits. *See* Las Cruces, N.M., Mun. Code § 19-164. But that offense is treated by Las Cruces as a petty misdemeanor, *see* Las Cruces, N.M., Mun. Code § 1-10(c)—the least serious of the three classes of state criminal offenses, *see* N.M.S.A. 1978 § 30-1-6. It is classified under Las Cruces's municipal code in the same manner as stealing books from the public library, *see* Las Cruces, N.M., Mun. Code § 1-10(c), § 19-51. Given this, we cannot say the officers were faced with a severe crime under

the laws of the municipality they were charged with enforcing. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1160 (10th Cir. 2008) (finding a crime non-severe in excessive force analysis because it was a misdemeanor under state law); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007) (same).

We do not suggest that discharging a firearm is or should always be treated this way by legislatures—only that the municipality whose laws the officers were charged with enforcing made such a judgment. We have no doubt that other municipalities may see the issue differently. Thus, although we do not intend to belittle the seriousness of firing shots in a residential neighborhood, this first factor favors Fisher.

The second *Graham* factor—whether the officers had reason to fear for their safety or the safety of others—poses a close call. The officers had reason to be concerned both for their safety and that a serious crime might be afoot when they arrived on the scene. They knew a potentially suicidal person was there, possibly armed, and that shots had been fired. But no one disputes the amount of force the officers employed upon first entering the backyard. They were surely entitled to enter with their guns drawn and to proceed with great caution.

Instead, Fisher contends that by the time the officers decided to handcuff him forcibly behind his back, a reasonable jury could conclude that Fisher was no longer a threat to himself, others, or the officers. We take seriously the admonition that we must judge the amount of force used "from the perspective of

a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008).

But we also acknowledge, in Fisher's favor, that by the time the officers handcuffed Fisher, the officers had frisked Fisher; had taken possession of the gun he had fired; had witnessed the severity of Fisher's wounds; and had started to provide Fisher with first aid to stop the flow of blood. Prior to taking Fisher into custody, the officers also felt comfortable enough with the situation to leave Officer Schnell alone with Fisher, un-handcuffed. *See Parker v. Gerrish*, 547 F.3d 1, 10 (1st Cir. 2008) (finding a reasonable jury could conclude plaintiff did not pose a threat to officers because the officers did not treat plaintiff as a threat during the encounter). Moreover, whatever the extant threat, the manner in which they handcuffed Fisher behind his back was aggressive and apparently painful.[2]

Finally, the third *Graham* factor favors Fisher: a reasonable jury could fairly conclude that Fisher was not actively resisting arrest. When the officers happened upon him, he did not move but remained kneeling, with his hands clearly visible. By all accounts, he cooperated in answering the officers' questions. It was only when asked to lie down flat on his wounded abdomen so

---

[2] The officers dispute these allegations, and that factual dispute is one for the jury. Depending on the circumstances, an officer on the scene may have greater personal or public safety concerns during an encounter. And in those cases, an officer may reasonably believe the suspect poses less of a threat handcuffed with his hands behind his back than handcuffed with his arms in front of him.

- 12 -

the officers could handcuff him behind his back that Fisher begged the officers to take account of his injuries, and, subsequently, not to handcuff him in this manner. Although one might see this as some form of resisting arrest, viewing the facts in the light most favorable to Fisher, a reasonable juror could conclude he was not resisting arrest, but was only pleading to be handled and handcuffed in a fashion that did not exacerbate his injuries.

In sum, we conclude a reasonable jury could find that the officers employed greater force than would have been reasonably necessary under the circumstances.

\* \* \*

We hasten to add this might be a very different case if the officers had no knowledge of Fisher's injuries or handcuffed him in front of his body. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1352–53 (11th Cir. 2002) (concluding officer did not use excessive force when he handcuffed plaintiff's arms behind his back, despite the fact that handcuffing led to eventual amputation of one arm, because officer did not know of plaintiff's preexisting injury). Or if Fisher had refused to cooperate with the officers. *See Estate of Larsen*, 511 F.3d at 1260–61 (emphasizing a suspect's refusal to cooperate as an important factor in finding the officer's use of force against suspect reasonable). Or if Fisher had uttered no complaint about the possible exacerbation of his injuries. *See Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005) (finding a plaintiff did not make out

excessive force claim where the plaintiff failed to complain to the officers that the handcuffing caused her pain).

But a reasonable jury could find the officers in this case knew that (1) Fisher was generally cooperative, (2) he suffered from grave injuries in need of immediate medical attention, and (3) the actions the officers took could have seriously aggravated his injuries. In such circumstances, a finding that the officers used greater force than would have been reasonably necessary can hardly be ruled beyond the pale of a triable claim.

*3. Injury*

The *Graham* factors help channel our evaluation of the application of force used in a particular encounter. But in nearly every situation where an arrest is authorized, or police reasonably believe public safety requires physical restraint, handcuffing is appropriate. *See Cortez*, 478 F.3d at 1130 (citing *United States v. Perdue,* 8 F.3d 1455, 1463 (10th Cir. 1993)). And the *Graham* factors are less helpful in evaluating the *degree* of force applied in cases, like the handcuffing case here, where the handcuffing is permissible yet the *manner* of handcuffing may render the application of force excessive. In those cases, an examination of the resulting injury supplements our inquiry.

That is where the defendants focus their arguments here. Indeed, the defendants urge, and the district court held, that Fisher's excessive force theory fails because he presented insufficient proof that his injury was more than de

- 14 -

minimis.  Although the defendants recognize Fisher testified that the pain he felt was "excruciating," and that during the officers' actions he felt as though his bicep was "tearing," Aplt. App. 78, they submit these statements are insufficient proof of an actual, non-de minimis injury.[3]  Although we agree with the approach taken by the district court, we cannot agree with the court's conclusion that a reasonable jury could not find the injury alleged here was more than de minimis.

To recover on his handcuffing claim, Fisher must show both that the force used was more than reasonably necessary and "*some actual injury* caused by the unreasonable seizure *that is not de minimis,* be it physical or emotional."  *Cortez*, 478 F.3d at 1129 n.25 (emphasis added).  As we explained, "unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight."  *Id.* at 1129.

---

[3]  Fisher also testified that "Dr. Jane, my neurologist, has informed me that the officers' actions did in fact exacerbate my injuries."  Aplt. App. 78.  But, as the City rightly notes and the district court held, this statement is hearsay and thus inadmissible in a summary judgment proceeding.  *See Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1252 (10th Cir. 2006) (court may not consider hearsay evidence in affidavits submitted in support of, or in opposition to, summary judgment).

*Manner or course of handcuffing*

The same analysis controls in this case. Handcuffing claims, in essence, concern the manner or course in which a petitioner is handcuffed.[4] Because handcuffing itself is not necessarily an excessive use of force in connection with an arrest, a plaintiff must show actual injury in order to prove that the officer used excessive force in the course of applying handcuffs. In short, without the handcuffing there would be no excessive force claim.

Our holding in *Cortez* acknowledged—and did not overrule—our prior conclusion that in excessive force cases "proof of *physical* injury manifested by visible cuts, bruises, abrasions or scars, is not an essential element." *Id.* at 1129 n.24 (citing *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1195 (10th Cir. 2001 (emphasis added)). Rather "the interests protected by the Fourth Amendment are not confined to the right to be secure against physical harm; they

---

[4] Other circuits agree. *See*, *e.g.*, *Marvin v. City of Taylor*, 509 F.3d 234, 247–48 (6th Cir. 2007) (explaining that "an excessive force claim can be premised on handcuffing, i.e., the right not to be handcuffed in an objectively unreasonable manner was clearly established"); *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) ("[M]inor incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force"); *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004) (finding petitioner's allegations and facts, if credited, would establish excessive force on a tight handcuffing claim, and holding that the right of an arrestee to be free from the use of excessive force "in the course of his handcuffing" was clearly established); *Braun v. Baldwin*, 346 F.3d 761, 763 (7th Cir. 2003) ("Braun also claims to have been subjected to excessive force in the course of his arrest, mainly because the handcuffs were fastened too tightly, . . . but as there is no indication that his arrest was effected in an unusual or improper manner, the excessive-force claim has no possible merit.").

include liberty, property, and privacy interests—a person's sense of security and individual dignity."  *Holland*, 268 F.3d at 1195.  We thus have consistently continued to reject "a bright-line rule requiring plaintiffs to demonstrate *physical* [as opposed to other] injury when bringing excessive force claims."  *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208 (10th Cir. 2008), *cert. denied*, 129 S. Ct. 1003 (2009) (emphasis added).  What we do require, though, is actual harm whether it be "physical or emotional."  *Cortez*, 478 F.3d at 1129 n.25.  This rule also has the salutary side effect of weeding out weak or frivolous claims.

We are equally consistent that in handcuffing cases, a plaintiff must establish some non-de minimis actual injury.  *Id.*; *see Vondrak*, 535 F.3d at 1208 ("[W]hen an excessive force claim relies upon unduly tight handcuffing, we have held that the plaintiff must show 'some actual injury.'"); *see also Segura v. Jones*, 259 F. App'x 95, 103–04 (10th Cir. 2007) (finding no more than a de minimis injury as a result of tight handcuffing or of the officer pushing petitioner against a wall in order to place handcuffs on her).

A number of circuits agree and have adopted some form of a non-de minimis injury requirement in excessive force handcuffing cases.[5]  *See, e.g.*, *Freedman v. Gore*, 483 F.3d 404, 416–17 (5th Cir. 2007) ("[M]inor, incidental

---

[5]  Even so, the jurisprudence in this context is muddled.  *See* Bryan N. Georgiady, Note, *An Excessively Painful Encounter:  The Reasonableness of Pain and De Minimis Injuries for Fourth Amendment Excessive Force Claims*, 59 Syracuse L. Rev. 123, 137–38 (2008) (discussing the circuit split).

injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force."); *Lyons*, 417 F.3d at 575–76 (explaining that in order to reach a jury on a handcuffing claim, "the plaintiff must allege some physical injury from the handcuffing"); *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) ("Although we no longer require 'significant injury' for excessive force claims . . . the injury must be more than de minimis."); *Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003) ("[F]or the application of handcuffs to amount to excessive force there must be something beyond allegations of minor injuries.").

The concurrence worries that our rule will allow legitimate claims to fall through the cracks for want of sufficient injury. We disagree. The injury alleged here obviously occurred during the officers' handcuffing of Fisher—during the application of handcuffs itself. It is not a case where brutal or excessive force exists independent of the handcuffing or where handcuffing simply occurs at some point, by happenstance. While one can imagine a fact setting that could fall into a grey area during an encounter that results in a handcuffing, our holding in *Cortez* demonstrates that we will have little trouble in sorting out excessive force allegations that are a part of handcuffing.[6] *Cortez* does not require us to apply a

---

[6] We do not agree with the concurrence that *Buck v. City of Albuquerque*, 549 F.3d 1269, 1290 (10th Cir. 2008), rejected a de minimis injury requirement where the injury occurs during *the course of handcuffing*. The facts of the case make it clear why not. Doyon (the only person even handcuffed) did not attempt

(continued...)

different showing when the excessive force claim involves the officers' actions in applying handcuffs—a manner of handcuffing claim—as compared to an excessive force claim that involves only a complaint that the handcuffs were put on too tightly.[7]

---

[6](...continued)
to flee, or pose a threat to any officer or individual, but nonetheless, the "officers grabbed him, dragged him, and pushed him face down on the pavement. One officer kneed him in the back and pinned him to the ground. An officer pushed him face forward onto the roof of a police car, and he was exposed to tear gas while handcuffed in the car." *Id.* at 1290. Although in the opinion's background section the court noted that Doyon was handcuffed after being pushed onto the police car, the excessive force discussion did not mention handcuffing other than to state that Doyon was exposed to gas while handcuffed in the police car.

*Buck*, in short, cannot fairly be read as a case in which excessive force arises solely from the manner in which officers applied handcuffs, rather than from force independent of the handcuffing itself.

[7] The concurrence raises one final point: the Supreme Court has disavowed a "significant injury" requirement in the Eighth Amendment context in assessing whether excessive force is cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). We agree, but see no conflict with *Cortez*. Our Fourth Amendment framework as set forth in *Cortez* (which came after *Hudson*) does not adopt a significant injury standard, but instead a lower de minimis injury one. Other courts also recognize this distinction. *See, e.g.*, *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *see also Bastien v. Goddard*, 279 F.3d 10, 15 & n.6, 7 (1st Cir. 2002) (rejecting a significant injury requirement in the Fourth Amendment context following *Hudson*).

Additionally, unlike in the Fourth Amendment context where subjective motivations are irrelevant, *see, e.g.*, *Graham*, 490 U.S. at 397, an important concern in the Eighth Amendment context is whether the force was applied maliciously and sadistically. "Differing standards under the Fourth and Eighth Amendments are hardly surprising: the terms 'cruel' and 'punishments' clearly suggest some inquiry into subjective state of mind, whereas the term 'unreasonable' does not." *Graham*, 490 U.S. at 398. In framing a claim based in

(continued...)

In sum, this case requires us not to extend *Cortez*, but to apply it. We are bound by circuit precedent, and see no significant analytical distinctions between an injury occurring because an officer fastens handcuffs too tightly and an injury arising out of the officer's manner of applying handcuffs. There may well be a nuanced distinction here, but the more obvious reading of *Cortez* is that it applies to those circumstances as well. And for now we are bound by *Cortez*.

*Applying* Cortez

Accordingly, our precedent requires a showing in a handcuffing case of an actual, non-de minimis physical, emotional, or dignitary injury to succeed on a claim. Applying *Cortez*, as explained above, we agree with the district court that a reasonable jury could find the officers used greater force than would have been reasonably necessary to effect a lawful seizure. We also conclude that on the facts alleged, a reasonable jury could conclude Fisher has shown some actual injury that is not de minimis.

Taking Fisher's affidavit together with the surrounding circumstances, a reasonable jury could find our actual injury requirement satisfied. The objective facts (viewed in the light most favorable to Fisher) are compelling on this score.

(1) At the time the officers encountered Fisher, they knew he had shot himself and lay bleeding on the ground.

---

[7](...continued)
part on the malevolent state of mind of the defendant, it follows that a significant injury would not be a prerequisite to recovery.

- 20 -

(2) His shirt was off and the gunshot wounds from his bicep and stomach were obvious.

(3) The officers tried to help staunch the wounds with a shirt or towel.

(4) The bicep wound had swollen to the size of a grapefruit.

(5) When told he was to be handcuffed behind his back, Fisher pleaded with the officers to avoid exacerbating the injuries.

(6) Nonetheless, an officer placed a knee in Fisher's back to leverage his arms, and handcuffed him with his arms behind his back.

(7) At that point, as Fisher alleges, "the officers' actions in forcing my arms behind my back despite my injuries caused me to endure excruciating pain.  It felt like my bicep was tearing. I believe that their actions exacerbated my injuries."  Aplt. App. 78.

This case does not involve only a self-serving affidavit asserting pain alone, without corroborating facts.  Instead, although Fisher easily could have done more to document the seriousness of his injuries, Fisher has established a reasonable jury could conclude from the alleged objective facts that the extreme manner of handcuffing caused him a more than de minimis injury.

These facts stand in contrast with those cases where a plaintiff complains only of fleeting discomfort from handcuffing, or red marks or swelling that disappear in a few hours or days.  *Cf. Cortez*, 478 F.3d at 1129 (concluding the injury was insufficient to support an excessive force claim when the only evidence in the record was Cortez's affidavit asserting that the handcuffs left red

marks that were visible for days).  Here, if the facts are as alleged, Fisher experienced an actual injury.[8]

In sum, the "*objective* facts of this case (when viewed in the light most favorable to the Plaintiffs, not the Defendants) are sufficient for a jury to find actual injury that is not de minimis given the interests protected by the Fourth Amendment and the course of events described by the Plaintiffs."  *Cortez*, 478 F.3d at 1132 n.28 (emphasis added).

Consequently, Fisher has sufficiently alleged a constitutional violation for qualified immunity purposes.

## B.  Clearly Established Law

---

[8]  *Compare Kopec*, 361 F.3d at 777–78 & n.7 (finding a triable claim on excessive force due to handcuffing when the petitioner estimated that it took the officer ten minutes to loosen the handcuffs despite the severe pain they were causing and his efforts to secure their release; the petitioner fell to the ground and fainted with pain, and the petitioner asserted he suffered permanent nerve damage to his right wrist); *with Gilles v. Davis*, 427 F.3d 197, 207–08 (3d Cir. 2005) (finding the facts at issue insufficient to establish excessive force due to handcuffing and distinguishing *Kopec*, concluding that in *Gilles*, "*obvious visible indicators of Gilles' pain were absent*"; other than his alleged complaint that the handcuffs were too tight, Gilles demonstrated no expression or signs of discomfort at the time he was handcuffed, nor did Gilles seek or receive medical treatment after the fact (emphasis added)); *see also Cardenas v. Fisher*, 307 F. App'x 122, 126 (10th Cir. 2009) ("In finding that Cardenas alleged more than a de minimis injury, the court noted the significant pain he experienced while handcuffed, his need to seek medical attention for his wrists, and his inability to work for two months as a result of his injuries. . . .  [A]ny dispute about the seriousness of these alleged injuries, including medical and work records, will be fair game for trial.  At that point 'Cardenas will be required to come forward with evidence sufficient to prove actual injury that is not de minimis.'").

The next question is whether the right at issue was clearly established at the time of the alleged unlawful incident. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. So, for a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). And while *Graham v. Connor* "clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness[,] . . . that is not enough." *Saucier*, 533 U.S. at 201–02.

The right violated must be clearly established "in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). As the Supreme Court has directed, qualified immunity should protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Fisher's claim meets this requirement. It is long established law of this and other circuits that a triable claim of excessive force exists where a jury could reasonably conclude that the officer handled a cooperating arrestee in a manner

that the officer knew posed a serious risk of exacerbating the arrestee's injuries, which were themselves known to the officer. For example, in *Martin v. Board of County Commissioners of County of Pueblo*, the plaintiff was forced from her hospital bed into a police van without any special accommodations—all simply so she could be processed at the police station for a speeding violation, and despite the officers' knowledge that she had a fractured neck. 909 F.2d 402, 403–04 (10th Cir. 1990). Under these facts, we held that the officers were not entitled to qualified immunity on plaintiff's excessive force claim because they acted in a manner that created a "serious known risk of physical trauma resulting in aggravation of an existing fracture to her neck in violation of clearly established law." *Id.* at 407; *cf. Howard v. Dickerson*, 34 F.3d 978, 979–81 (10th Cir. 1994) (holding that the district court properly denied officer's motion to dismiss plaintiff's claim of deliberate indifference to medical needs under the Fourteenth Amendment's more rigorous standards where plaintiff alleged that despite telling officers that "she recently underwent neck surgery [and therefore that] handcuffing her behind her back would cause injury," the officer nevertheless proceeded to handcuff her behind her back).

Cases from other jurisdictions confirm and underscore the established nature of the right at issue. In *Walton v. City of Southfield*, the Sixth Circuit sixteen years ago faced a claim against officers who stopped the plaintiff's car when they saw that the plaintiff's daughter was not secured in her child seat.

995 F.2d 1331, 1333–34 (6th Cir. 1993), *superseded by statute on other grounds as stated in Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407–08 (6th Cir. 2007). The officers proceeded to frisk and then handcuff the plaintiff behind her back, despite the plaintiff begging them not to be handcuffed in that manner because she had just come from the doctor's office for treatment of an injured shoulder. *Id.* at 1334. The plaintiff brought suit for excessive force to recover for injuries to her shoulder, and the Sixth Circuit found genuine issues of material fact concerning whether the officer used excessive force in effecting the handcuffing. *Id.* at 1342. In so concluding, the court held that "[a]n excessive use of force claim could be premised on [the officer's] handcuffing [of the plaintiff here] if he knew that she had an injured arm and if he believed that she posed no threat to him." *Id.* at 1342; *see also Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998) (denying summary judgment to officers where plaintiff had a visible sling on his left arm and yet officers proceeded to grab his wrist, push him backward, and hold him up against a door). We see no possible basis for reaching a different result in this case.

### III. Conclusion

For the foregoing reasons, we reverse the grant of summary judgment and remand for further proceedings consistent with this opinion.

07-2294, *Fisher v. City of Las Cruces*

**GORSUCH**, Circuit Judge, concurring in the judgment.

Fourth Amendment excessive force claims require us to ask "whether the officers' actions are objectively reasonable" in light of three factors. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). In Section II.A.2 of its opinion, the majority explains how each of these factors suggests that the officers may not have acted reasonably in their arrest of Mr. Fisher. In Section II.B, the majority demonstrates that the law the officers allegedly violated was clearly established at the time of their actions. The result, of course, is that Mr. Fisher has stated a triable claim for a jury to resolve. With all of this, I concur.

In Section II.A.3, however, the majority takes a detour, asking whether, in addition to satisfying all three *Graham* factors, Mr. Fisher has also shown that he suffered a "non–*de minimis* injury." Previously, we have required proof of some such injury only in cases involving allegations of overly tight handcuffing, and we have done so only to fill a small analytical void that *Graham* left open. *See Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (en banc).[1] Indeed, it

_____

[1] As we recognized in *Cortez*, *Graham* offers little guidance in tight handcuffing cases because police officers almost always may use handcuffs in the course of a lawful arrest, regardless of the severity of the crime, the dangerousness of the suspect, or any attempts at flight — *Graham's* three factors. *See Cortez*, 478 F.3d at 1128. At the same time, we have acknowledged, it is possible to apply handcuffs so tightly, even in an otherwise lawful arrest, that it rises to the level of objectively unreasonable, or excessive, force. Because, we have held, tight handcuffing claims aren't foreclosed just because *Graham's* factors do not speak to them, and mindful of *Graham's* admonition that its factors were never meant to be exhaustive, we, like other circuits, have fashioned a test

(continued...)

was common ground shared by every member of the *en banc* court in *Cortez* that, *outside* the context of a claim alleging overly tight handcuffing, proof of injury is not essential to an excessive force claim. *See id.* at 1129 n.24 (holding with respect to Tina Cortez, who was not handcuffed, that "proof of physical injury . . . is not an essential element"); *id.* at 1147 (Gorsuch, J., concurring in part and dissenting in part) (noting with respect to Tina Cortez that "the circumstances of an encounter . . . may themselves be so outrageous as to demonstrate excessiveness" without any evidence of a consequent injury). In discussing the injury requirement in *Cortez*, we carefully explained that the relevant issue with respect to Rick Cortez's tight handcuffing claim was "whether the *failure to adjust* Rick Cortez's handcuffs during an arrest constitutes excessive force," and held narrowly that "*unduly tight handcuffing* can constitute excessive force where a plaintiff alleges some actual injury *from the handcuffing* and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the *handcuffs were too tight*." *Id.* at 1129 (emphases added).[2]

---

[1](...continued)
to identify when the otherwise lawful application of handcuffs constitutes force that a reasonable jury could find objectively unreasonable.

[2] To be sure, with respect to Tina Cortez, we suggested that a non–*de minimis* injury may be *probative evidence* of excessive force. *See Cortez*, 478 F.3d at 1132. But no one in *Cortez* suggested that a non–*de minimis* injury is *required* for excessive force claims other than those alleging overly tight handcuffing. *See id.* at 1131 ("Physical contact is not required for an excessive force claim — patently unreasonable conduct is."); *id.* at 1147 (Gorsuch, J.,

(continued...)

-2-

Mr. Fisher, however, doesn't complain that he was handcuffed too tightly — in fact, he doesn't complain about being handcuffed at all. Instead, he argues that, *before* he was handcuffed, officers unreasonably manhandled him, despite knowing that he posed no threat, was not resisting or evading arrest, and was gravely injured. The court today nonetheless extends the non–*de minimis* injury requirement to this case, explaining that the requirement now applies not just to cases alleging overly tight handcuffing, but also to cases where force is applied "in the course of applying handcuffs." Maj. Op. at 16.

This holding seems to me at once both more and less than we need to say. It is more than we need to say because, whether or not an injury requirement pertains in these circumstances, the majority tells us that Mr. Fisher has met it and that his claim thus survives summary judgment. Under the majority's own analysis, then, resolving whether and to what extent the injury requirement extends beyond claims alleging overly tight handcuffing isn't necessary to the resolution of this appeal. We could have simply assumed without deciding the injury requirement's application to this case. Judicial restraint usually means answering the questions we must, not those we can.

---

[2](...continued)
concurring in part and dissenting in part) ("[W]here the facts surrounding a seizure are not themselves patently excessive . . . , more than a *de minimis* injury is required to suggest that the force used was excessive."). When it came to Tina Cortez, the *Cortez* majority and dissent only disagreed about whether, in the aggregate, she had adduced sufficient probative evidence of excessive force to overcome the officers' qualified immunity.

At the same time, the majority's holding seems to me less than we need to say because the idea of extending the injury requirement raises a number of important questions that the parties in this case have not addressed and that, left unaided by them, we would do well to avoid. By way of example, in *Buck v. City of Albuquerque*, 549 F.3d 1269, 1278, 1290 (10th Cir. 2008), Denis Doyon did not resist arrest, but was pushed face down onto the pavement, kneed in the small of his back, pinned to the ground, handcuffed, and then exposed to tear gas while handcuffed. *See* Maj. Op. at 18 n.6. Most, if arguably not all, of Mr. Doyon's excessive force claim concerned the force officers applied "in the course of handcuffing," yet we permitted it to proceed without any showing of injury. How are we to reconcile our decision today with *Buck*: are we to suppose that the appropriate Fourth Amendment test really turns on what *percentage* of a plaintiff's excessive force claim involves what transpired during the course of the handcuffing process? District courts and future panels of this court are left to figure all this out.

Even more fundamental questions still lurk here. How are we to square our opinion today with *Cortez*'s admonition that "proof of physical [or emotional] injury . . . is not an essential element of an excessive force claim"? 478 F.3d at 1129 n.24. And how do we reconcile it with the Fourth Amendment's plain language, which condemns all *unreasonable* seizures? Or the Supreme Court's admonition in *Graham* that whether a seizure is unreasonable turns on an

-4-

objective assessment of the officers' conduct, not on subjective factors like a particular plaintiff's susceptibility to injury? Are we certain that the Fourth Amendment really prefers, as an injury requirement might, eggshell plaintiffs over more resilient individuals? Or that the fortuity of whether an officer chooses to deploy handcuffs should determine the quantum of evidence a plaintiff must marshal to prove a constitutional violation? Most pointedly of all, how can we explain that free citizens must prove injuries to prevail on excessive force claims under the Fourth Amendment in light of the Supreme Court's and our own refusal to require convicted felons to prove injuries to prevail on similar claims under the Eighth Amendment? *See Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *United States v. LaVallee*, 439 F.3d 670, 688 (10th Cir. 2006). Does the Constitution really prefer imprisoned criminals over everybody else? To say these questions, unbriefed and unargued by the parties before us, are perplexing is to put it mildly. I, for one, would steer clear of this thicket until the case before us requires us to enter it and the parties' arguments can help us steer our way through. For these reasons and with these caveats, I concur in the judgment.