**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 14, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ANTONIO DELMONICO,

        Plaintiff-Appellant,

v.

JEFF CAPITO (Pueblo Police Officer) in his individual and professional capacities; NATHAN PRUCE (Pueblo Police Officer) in his individual and professional capacities; CITY OF PUEBLO, COLORADO; JAMES BILLINGS, JR. (Chief of Pueblo Police Dept.) in his individual and professional capacities,

        Defendants-Appellees.

No. 09-1178
(D.C. No. 1:08-CV-00498-LTB-BNB)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff Antonio DelMonico brought this pro se civil rights action pursuant to 42 U.S.C. § 1983 and Colorado state tort law, complaining that the defendants wrongfully arrested and incarcerated him following an altercation at his ex-girlfriend's house. Both plaintiff and defendants moved for summary judgment, the defendants contending that there had been no constitutional violation and that they were entitled to qualified immunity. A magistrate judge recommended that plaintiff's summary judgment motion be denied and that defendants' motion be granted. The district court adopted this recommendation over plaintiff's objections, entered judgment in favor of defendants on plaintiff's constitutional claims, and dismissed his state law claims without prejudice. This appeal followed. We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

## BACKGROUND

The following facts are undisputed.[1] On May 22, 2007 at around 2:00 a.m., Officer Jeff Capito was dispatched to St. Mary-Corwin Hospital in Pueblo, Colorado. The hospital had reported a patient with a knife wound. The patient was the plaintiff.

---

[1] Plaintiff asserts that these facts are not undisputed. But he does not identify specific facts in the record that contradict them. Instead he claims that every statement given by a non-police witness in this case was "coerced," thereby creating genuine issues of material fact. Aplt. Reply Br. at 3-4. We deal with his claims of coercion in the analysis section of this order and judgment, *infra*.

*Plaintiff's Initial Statement to Officer Capito*

Officer Capito interviewed plaintiff at the hospital. Plaintiff told him that earlier that evening he had gone to Patricia Ricker's residence, "to help [her], if she needed it." R., Vol. I, at 75.[2] Upon arriving at her residence he knocked on the door until Frank Marksberry answered it. Ms. Ricker was present at the house but she did not speak. Plaintiff believed Mr. Marksberry was preventing her from talking to him.

Plaintiff and Mr. Marksberry began to fight. Mr. Marksberry drew a knife and cut plaintiff with it. Plaintiff wrested the knife away from Mr. Marksberry and then walked to the "Prime Time" bar, where he got a ride home.

*Officer Pruce Visits the Ricker Residence*

At around the same time Officer Capito was dispatched to the hospital, Officer Nathan Pruce was dispatched to the Ricker residence in response to an abandoned 911 call. Upon arrival, he spoke with Ms. Ricker and Mr. Marksberry. They informed him that the "unwanted party" who had occasioned the call had already left. *Id.* at 80. Officer Pruce then departed the scene.

Shortly after he left the Ricker residence, Officer Pruce received another dispatch call stating that the Ricker residence might have been the scene of a

---

[2]     The magistrate judge incorrectly identified this individual as "Patricia Riker." We have corrected the spelling of her surname.

stabbing. He returned to the residence, where Ms. Ricker informed him that Mr. Marksberry had already left.

During his second visit to the Ricker residence, Officer Pruce made several visual observations. He observed drops of blood on and near a door to the residence. He also noticed drops of blood on the floor near the residence door leading outside. He observed that a board that had been used to cover a window in the residence had been dislodged from the window and was lying against the wall, under the window. He did not see any blood near the window or on the board under the window.

Dispatch contacted Officer Pruce again and advised him that officers had made contact with Mr. Marksberry at his residence. Officer Pruce advised the officers to take Mr. Marksberry to the police station for questioning. At the station, Officers Pruce and Capito questioned Mr. Marksberry about the incident. He provided the officers with voluntary oral and written statements.

### *Mr. Marksberry's Statement*

Mr. Marksberry told the officers that he had been at Ms. Ricker's house for approximately two hours when he heard a loud knocking on the front door. He heard plaintiff say "'Patty I need to talk with you.'" *Id.* at 85. When he asked Ms. Ricker who was at the door, she said, "'my ex.'" *Id.*

Plaintiff then pushed in the board covering the front window and entered the residence holding a large steel pipe. He struck Mr. Marksberry in the face

with the pipe.  Mr. Marksberry reached for his folding box-cutter knife, which was clipped to his pants pocket.  He swung the knife blade open and slashed at plaintiff.  Then he took the pipe away from plaintiff and chased him from the house.  After that, Mr. Marksberry threw the pipe and the knife into some grass and bushes.

Mr. Marksberry showed Officer Pruce the wound on his face where he had been struck with the pipe.  Officer Pruce then transported him to Ms. Ricker's house where he led the officer to a large piece of steel pipe and a blue folding box cutter-style knife.

### *Plaintiff's Second Statement to Office Capito*

Having noted several differences between Mr. Marksberry's narrative of events and plaintiff's, Officer Capito returned to the hospital to re-interview plaintiff.  Plaintiff gave him a new version of events that differed somewhat from his previous story.  He now said that he had been drinking at a bar called "Phil's Radiator" and went to Ms. Ricker's residence to get a ride home. He knocked on the door until Mr. Marksberry answered.  As soon as he entered the house Mr. Marksberry confronted him.  A fight ensued with Mr. Marksberry pulling a knife and cutting him.

Officer Capito told plaintiff he knew more details than that.  Plaintiff immediately stated that he entered the house with permission.  Officer Capito found this comment suspicious because he had not yet accused plaintiff of

-5-

entering the house without permission.  Plaintiff further stated that after he

entered the residence and Mr. Marksberry confronted him with the knife, he

grabbed a pipe that was lying on a shelf and tried to defend himself with it.  After

Mr. Marksberry cut him he ran out the door, then re-entered and again fought

with Mr. Marksberry.  He then pulled off the board from the window and fled out

the window.  A friend took him to the hospital for treatment.

Officer Capito asked plaintiff about his relationship with Ms. Ricker.  He

stated that it was an intimate relationship and had been for several months.[3]

### *The Arrest*

Based in part on Mr. Marksberry's statements, plaintiff's inconsistent

statements, and the physical evidence Officer Pruce observed at the scene,

plaintiff was arrested for first degree burglary, second degree assault, and

domestic violence.  The charges against him were later dismissed.

## ANALYSIS

### 1.  Standard of Review

"We review the district court's grant of summary judgment de novo,

employing the same legal standard applicable in the district court."  *Thomson v.*

*Salt Lake County*, 584 F.3d 1304, 1311 (10th Cir. 2009).  A summary judgment

motion should be granted "if the pleadings, the discovery and disclosure materials

---

[3]     Ms. Ricker also gave written and oral statements to the officers.  These
statements will be discussed later in the analysis.

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We "view the facts, and all reasonable inferences those facts support, in the light most favorable to the non-movant." *Fisher v. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009).

Here, the officers have asserted qualified immunity. This court reviews summary judgment decisions involving a qualified immunity question differently than other summary judgment rulings because of the purposes behind qualified immunity. *Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008). When a defendant raises a qualified immunity defense on summary judgment, the plaintiff must show that (1) the defendant's conduct violated a constitutional right, and (2) the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009) (holding that the sequence of the *Saucier* inquiry is discretionary).

### 2. Existence of Probable Cause

Count One of plaintiff's complaint asserts that Officers Capito and Pruce wrongfully arrested him without probable cause. Count Two asserts that as a result he was wrongfully incarcerated in the Pueblo County Jail. Count Three asserts that Pueblo Police Department Chief James Billings, Jr. failed to prevent the officers from wrongfully arresting and/or wrongfully incarcerating plaintiff and that he maintained illegal policies that permit officers to arrest people without

probable cause. As the district court recognized, all of these claims ultimately turn on whether the officers had probable cause to arrest plaintiff.

A warrantless arrest violates the Fourth Amendment unless the arrest is supported by probable cause. *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008). "In evaluating the existence of probable cause, we consider whether the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (quotation omitted). "Our determination on this score is an independent and objective one. Thus an officer's own subjective reason for the arrest is irrelevant, and it does not matter whether the arrestee was later charged with a crime." *Id.*

### a. Ms. Ricker's Statement

Plaintiff contends that probable cause was absent because Ms. Ricker "signed a verified statement [stating that he] did not enter her residence through a window and did not commit any crimes." Aplt. Opening Br., Attach. 1, at 2. Plaintiff has not accurately characterized her statement. While she checked a box on the Domestic Violence Victim Report Form & Case Summary indicating that plaintiff had not struck or injured *her*, *see* R., Vol. I, at 22, nowhere did Ms. Ricker state on this form that plaintiff had not committed *any* crimes against *anyone*. In fact, Mr. Marksberry informed Officer Pruce that plaintiff struck him

in the face with a pipe, which appears to meet the elements of the crime of second degree assault. *See* Colo. Rev. Stat. § 18-3-203(1)(b) and (d). Striking Mr. Marksberry under these circumstances also fits the definition of "domestic violence," which includes crimes against persons other than those in an intimate relationship with the accused "when used as a method of coercion, control, punishment, intimidation, or revenge" against the person with whom the accused had an intimate relationship. *Id.* § 18-6-800.3(1).

Of more concern is Ms. Ricker's notation on the form, signed prior to plaintiff's arrest, that "He didn't come thru window." R., Vol. I at 23. She later filed a declaration stating that she made this notation because she was being pressured to state falsely that plaintiff came through the window, when in fact she had voluntarily invited him into her home. Under Colorado law, first degree burglary requires, among other things, unlawful entry into a building or occupied structure. Colo. Rev. Stat. § 18-4-202(1). If plaintiff was voluntarily admitted into Ms. Ricker's home, the entry would likely not qualify as first degree burglary. But even so, Ms. Ricker's statements that plaintiff did not come through the window cannot defeat probable cause, for two reasons.

First, the officers had other evidence, both physical and testimonial, that strongly contradicted Ms. Ricker's statements. The board that had covered the window was dislodged, suggesting that it had in fact been recently removed. Although plaintiff told Officer Capito at one point that he *left* through the

-9-

window, Officer Pruce did not see blood on the window or the board that had been removed from it as might be expected if plaintiff departed by that route after being slashed with the knife. But he did see blood near the door to the residence, leading outside, suggesting that plaintiff left through the front door after he was injured.[4] Thus, a reasonable officer could have concluded that the dislodging of the board was more likely the result of plaintiff's intrusive entry than of his hasty departure. Supporting this theory, Mr. Marksberry specifically told officers that plaintiff came in through the window armed with a pipe.

Second, even if Ms. Ricker's statement would have given a reasonable officer pause before arresting plaintiff for first degree burglary, the officers had two other grounds on which to arrest plaintiff. Thus, the arrest was supported by probable cause as to these crimes.

### b. Effect of Dismissal

Plaintiff next argues that the Pueblo County District Attorney's Office later dismissed the charges against him because probable cause did not exist. As the magistrate judge noted, the fact that charges were dismissed is not determinative of the issue of probable cause. Moreover, plaintiff does not cite to any evidence

---

[4] The location of this blood does not support plaintiff's theory that he both entered and left through the front door. There is no evidence that plaintiff was bleeding when he *entered* the residence.

-10-

in the record that would reveal the reason for the dismissal of charges. Thus, his argument lacks merit.[5]

### c. Ms. Ricker's Affidavits

Plaintiff complains that the magistrate judge and the district court failed to discuss affidavits he filed executed by Ms. Ricker after the charges were dismissed. He contends that several statements she made in these affidavits negate the existence of probable cause. Ms. Ricker stated that:

1. Officer Pruce attempted to get her to write, falsely, on the domestic violence form that plaintiff came in through the window. As we have already discussed, however, the officers had probable cause to arrest plaintiff whether or not Ms. Ricker disputed their theory about how he entered the residence. Therefore, any pressure Officer Pruce exerted on her to conform her statement to the officers' conclusions from other evidence does not negate probable cause.

2. Officer Pruce came to her residence a total of four times, until he coerced her into giving a "false oral report" against plaintiff. Aplt. Opening Br., Attach. 1 at 3. If Ms. Ricker's allegedly false oral statement were the only evidence implicating plaintiff, her assertions of police coercion might give us pause. But other physical evidence and Mr. Marksberry's statements amply

---

[5] The magistrate judge noted defendants' argument that the charges were dismissed because Ms. Ricker and Mr. Marksberry failed to show up at plaintiff's preliminary hearing, but he acknowledged that the defendants also failed to supply any evidence in support of this statement. R., Vol. I at 854 n.3.

-11-

supported the officers' decision to arrest plaintiff. And it is the objective reasonableness of the decision to arrest that concerns us. *See Fogarty*, 523 F.3d at 1156 (identifying objective reasonableness rather than subjective motivation as standard for probable cause determinations). In any event, like the district court, we need not rely on Ms. Ricker's disputed oral statements to establish probable cause in view of the other evidence.

3. She reported to Officer Pruce that plaintiff acted in self-defense after Mr. Marksberry attacked him with a knife. But a witness's opinion that a party to a fight acted in self-defense would not necessarily defeat probable cause. Under Colorado law, self-defense is an affirmative defense that may be raised by the defendant at trial when the record contains credible evidence to support it. *Cassels v. People*, 92 P.3d 951, 956 (Colo. 2004); Colo. Rev. Stat. § 18-1-407(1). Plaintiff fails to show that Ms. Ricker's alleged protestations so overcame the other significant evidence in this case that *negated* self-defense--by showing that plaintiff and not Mr. Marksberry had been the initial aggressor--that a reasonably cautious officer would not have arrested plaintiff.

4. Mr. Marksberry told her that the Pueblo Police Department told him they were going to take him to jail if he did not write a statement against plaintiff. This hearsay statement is inadmissible for summary judgment purposes. *See, e.g., Fisher*, 584 F.3d at 897 n.3 (stating hearsay is inadmissible in summary judgment determinations).

-12-

### d. Caitlin Allen Statements

Plaintiff presented statements from a witness named Caitlin Allen who claimed to have been present at the hospital when Officer Capito interrogated plaintiff. She stated that Officer Capito delayed plaintiff's medical treatment, keeping plaintiff in severe pain while he tried to obtain a "false confession" from plaintiff that he broke into Ms. Ricker's house. R., Vol. I at 555.[6] While aggressively interrogating a wounded suspect could conceivably give rise to a Fourteenth Amendment claim, *see Chavez v. Martinez*, 538 U.S. 760, 773, 779-80 (2003), such a Fourteenth Amendment claim is not included as part of plaintiff's complaint, *see* R., Vol. I at 855 n.5. Again, as to plaintiff's Fourth Amendment claims, which are the focus of our inquiry, the objective evidence supports the existence of probable cause to arrest, whether or not Officer Capito attempted to obtain a confession from plaintiff to bolster the evidence he already had.

### e. Conclusion

Plaintiff has failed to show that the defendant officers lacked probable cause to arrest him. The district court therefore properly granted summary judgment to the defendants on his claims on the basis of qualified immunity. Since no showing of a constitutional violation was made, plaintiff's claims

---

[6] Plaintiff also filed an affidavit stating that Officer Capito delayed his medical treatment while he interrogated him. R., Vol. I at 190.

against Chief Billings fail as well, and his state law claims were properly dismissed.

### 3. Completeness of Record

Plaintiff further argues that the district court's summary judgment ruling must be reversed because it was reached on the basis of an incomplete record. He argues that some of the documents attached to his summary judgment pleadings did not scan completely into the district court's PACER system and were therefore not considered. The district court, addressing this claim, concluded that all of the allegedly omitted documents were included in duplicate form in a separate document entitled "Plaintiff's Response to Defendants' Motion for Leave to Supplement Defendants' Motion for Summary Judgment." *See* R., Vol. I, at 906. We conclude that plaintiff has to failed to cast appreciable doubt on the factual accuracy of this conclusion and, more fundamentally, he has failed to demonstrate that the district court made its determination on an incomplete record.

### 4. Recusal

Plaintiff contends that the magistrate judge was biased against him and should have recused himself. He presents no evidence that he ever filed a recusal motion in the district court. We therefore need not consider this claim.

The judgment of the district court is AFFIRMED.  Plaintiff's motion to proceed in forma pauperis is GRANTED.

Entered for the Court

Jerome A. Holmes
Circuit Judge