**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROGER SCOTT BRYNER,

        Plaintiff-Appellant,

v.

STATE OF UTAH,

        Defendant,

and

COUNTY OF SALT LAKE;
MICHAEL ROWLEY; FNU
ROCKAZOLA,

        Defendants-Appellees.

No. 10-4135
(D.C. No. 2:08-CV-00463-CW)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **HARTZ**, and **GORSUCH**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff-appellant Roger Scott Bryner, appearing pro se, appeals the dismissal of his federal action under 42 U.S.C. § 1983 against the above-named defendants. He raises three points on appeal: (1) that the district court erred in resolving that *Heck v. Humphrey*, 512 U.S. 477 (1994), applies to a number of his claims because *Heck* only applies to claims for malicious prosecution;[1] (2) that the claims dismissed pursuant to *Heck* should be dismissed without prejudice; and (3) that the district court erred in holding that Mr. Bryner failed to state a claim for excessive force. Because we agree with the second of these arguments, we affirm the district court's dismissal, but remand with direction that it be modified so that the claims dismissed due to *Heck* are dismissed without prejudice.

## I. Factual and Procedural History

In April 2007, Mr. Bryner went to the Utah Third District Courthouse to file papers in a case. He became involved in a verbal dispute with court personnel that resulted in law enforcement being summoned. Mr. Bryner was escorted to

---

[1]  In *Heck v. Humphrey*, the Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. 477, 486-87 (1994) (footnote omitted).

-2-

the entrance of the courthouse and then arrested for criminal trespass and disorderly conduct when he refused to leave. Mr. Bryner was eventually convicted in Utah justice court on two counts but has appealed to the Utah district court, where, under Utah law, he is entitled to a trial de novo. *See* Utah Code Ann. § 78A–7–118(1). In June 2008, Mr. Bryner filed a civil-rights complaint under 42 U.S.C. § 1983 against the State of Utah; Salt Lake County, Utah; Deputy Michael Rowley; Deputy Rockazola; and various unnamed state employees. The court allowed him to proceed *in forma pauperis*. After motions to dismiss were filed by Deputy Rowley and the State of Utah, the court dismissed the State of Utah from the action. After the case was assigned to a magistrate judge, Mr. Bryner filed a motion to amend his complaint and was given ten days to submit a proposed amended complaint. He submitted his proposed amended complaint after that deadline.

## A. Report and Recommendation

Because Mr. Bryner appeared *in forma pauperis* in the district court, the magistrate judge screened his case under 28 U.S.C. § 1915(e)(2)(B) to determine whether his claims should be dismissed as frivolous, malicious, or failing to state a claim upon which relief can be granted. In doing so, he considered the contents

of the untimely proposed amended complaint.[2]  We shall discuss only those § 1983 claims relevant to this appeal.

### 1.  Fourteenth Amendment

The magistrate judge read Mr. Bryner's proposed amended complaint as alleging that Mr. Bryner's Fourteenth Amendment due process rights were violated when he was denied a fair trial in state court and denied the possibility of a fair trial in federal court by the destruction of evidence, presumably the asserted destruction of a digital tape recording by Deputy Rowley.[3]  The magistrate judge recommended dismissal of this claim based on *Heck v. Humphrey*, on the ground that a federal decision concluding that the destruction of evidence had denied Mr. Bryner a fair trial in state court would necessarily undermine the validity of his state court conviction.

### 2.  Wrongful Arrest, Wrongful Imprisonment, Malicious Prosecution, and Abuse of Process

The magistrate judge read Mr. Bryner's amended complaint as asserting that the actions taken by the individual defendants (1) involved in his removal and

---

[2]     The court found that there were no issues raised in the original complaint that were not raised in the amended complaint as well.

[3]     Mr. Bryner alleged he had miniature tape recorder in his possession that was running during the incident in question and that, when the recorder was returned to him after his release, there was no recording.  Mr. Bryner alleges that Deputy Rowley must have erased the tape after the recorder was taken from Mr. Bryner.

arrest at the courthouse April 18, 2007, and (2) involved with the prosecution of the criminal charges that resulted from that arrest, violated his constitutional rights. He asserted that the arrest and his subsequent imprisonment were wrongful, and that his prosecution was malicious and constituted an abuse of legal process. The magistrate judge recommended that all of these claims be dismissed on *Heck* grounds because they are all "inextricably linked to and would undermine the validity of Plaintiff's conviction stemming from his April 18, 2007 arrest." R., Vol. 1 at 201.

### 3. Excessive Force

Mr. Bryner also raised an excessive force claim against Deputy Rowley. He alleged that when he went to a room in the courthouse and tried to file a pleading with one of the judges' clerks, he was grabbed and pushed by Deputy Rowley, who told him to leave and ordered him not argue with the clerk. The clerk had told Mr. Bryner he would have to go to another floor to file his papers (although allegedly one of the other court employees agreed that he could file them in the room he was in). Mr. Bryner alleges that Deputy Rowley and another deputy lifted him on both shoulders and shoved him. He was then escorted to the first floor but was eventually arrested after he continued to assert that he wanted to file his papers. The magistrate judge recommended dismissal for failure to state a claim upon which relief could be grounded. The magistrate judge concluded that, as Mr. Bryner refused to leave the courthouse and admitted he

pushed Deputy Rowley, the facts, as alleged, showed no unconstitutional use of force.

## B. District Court Decision

The district court read Mr. Bryner's objection to the magistrate judge's report and recommendation as asserting, among other complaints, that "the court must first determine if it has jurisdiction and, if it concludes under *Heck* that it lacks jurisdiction, dismiss the complaint without prejudice." *Id.* at 255. The district court's decision accepted and adopted both the reasoning and the conclusion of the magistrate judge's report and recommendation and made three rulings: (1) that Mr. Bryner's justice court conviction was not overturned by the filing of an appeal to the state district court; (2) that some of the causes of action brought by Bryner, specifically claims "that he has been wrongfully arrested and imprisoned" were precluded by *Heck v. Humphrey*, and (3) that assertion of a claim precluded by *Heck v. Humphrey* constitutes a failure to state a claim upon which relief may be granted, not a jurisdictional defect. The court then dismissed Mr. Bryner's claims with prejudice. Mr. Bryner appeals the dismissal.

## II. ANALYSIS

### A. Does *Heck v. Humphrey* Apply Only to Malicious Prosecution?

Mr. Bryner argues that, as to his claims for "False Arrest charges and destroying evidence or the like[,]" Aplt. Br. at 8, the district court erred in dismissing on the basis of *Heck* because *Heck* "only applies to malicious

prosecution," *id.* at 4.[4]  He argued in his objections to the magistrate judge's recommendations that "Younger is the applicable standard for a wrongful arrest, not Heck which only applies to malicious prosecution."  *See* R., Vol. 1 at 217. This argument, which Mr. Bryner makes only in a conclusory fashion, fails on the merits.

In *Heck*, the Supreme Court was concerned with not allowing a party to collaterally attack his or her criminal conviction through the vehicle of a civil suit under 42 U.S.C. § 1983.  It held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

---

[4]  Mr. Bryner argues that the court should, instead, have abstained from hearing the claims under the *Younger* abstention doctrine and stayed those claims pending final outcome in the state court.

512 U.S. 477, 486-87 (1994) (footnotes omitted). The plaintiff in *Heck*, who had previously been convicted in state court of voluntary manslaughter, filed a federal suit under 42 U.S.C. § 1983 alleging that two prosecutors and a state police investigator "had engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to petitioner's arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'; and caused 'an illegal and unlawful voice identification procedure' to be used at petitioner's trial." 512 U.S. at 479 (quoting Mr. Heck's complaint). The Court found these claims analogous to the common-law cause of action for malicious prosecution, and noted that "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Id*. at 484. The court found that Heck's § 1983 claims necessarily required him to prove the unlawfulness of his conviction or confinement and were thus barred. *Id*. at 90. We assume it is this ruling that led Mr. Bryner to his conclusion that *Heck* applies only to malicious prosecution claims.

But the Court in *Heck* also presented an example of a § 1983 action that did not seek damages directly attributable to conviction or confinement, but "whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrong." 512 U.S. at 486 n.6. The court reasoned that a plaintiff who had been previously convicted of resisting arrest, which the Supreme

-8-

Court defined for the purposes of the example "as intentionally preventing a peace officer from effecting a *lawful* arrest," *id.*, would be barred from bringing a § 1983 claim seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures against the officer who made the arrest in question. The court concluded that such a claim would necessarily imply that the arrest was not lawful. *Id.* Thus, it is clear that Mr. Bryner is mistaken and that *Heck* does not apply *only* to malicious prosecution claims.

We recognize that the Court presented a second example of a § 1983 action that did not seek damages directly attributable to conviction or confinement but whose prosecution would *not* necessarily imply that conviction was wrongful. *See id.* at 487 n.7. That example concerned a previously convicted plaintiff who brought a § 1983 claim alleging a search that violated his Fourth Amendment right to be free from unreasonable searches, but produced evidence that was later introduced in the state criminal trial resulting in his conviction. *Id.* at 487 n.7. The court noted that "such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful" "[b]ecause of doctrines like independent source and inevitable discovery." *Id.* at 487 n.7. Mr. Bryner makes no attempt to show that *his* wrongful arrest, wrongful imprisonment, and destruction of evidence claims fall under this second example and, thus, would not be barred by *Heck*. Even if he had undertaken such an argument, it would be futile.

The magistrate judge read the destruction of evidence claim in Mr. Bryner's less-than-clear proposed amended complaint as, essentially, a due process claim arguing that the destruction of evidence led to a denial of a fair trial. He read the wrongful arrest and imprisonment claims as essentially Fourth Amendment improper-seizure claims arguing that the officers in question did not have probable cause to arrest and hold him late into the night for the crimes for which he was later convicted. Mr. Bryner did not take issue with these interpretations in his objections to the magistrate judge's recommendation and does not contest them on appeal.

Mr. Bryner's destruction of evidence claim therefore directly attacks the fairness of his state court proceeding and falls squarely under *Heck*'s bar of collateral attacks on a state court proceeding through the use of § 1983. As to the other two unlawful seizure claims, the question is, whether, to prevail on these § 1983 claims, Mr. Bryner would have to necessarily negate an element of one of the offenses of which he has been convicted.

Mr. Bryner was convicted of the class B misdemeanor of criminal trespass and the class C misdemeanor of disorderly conduct. Mr. Bryner presented to the federal district court the jury instructions that were given at his state court trial. They show that the elements for his criminal trespass conviction included that: (1) although Mr. Bryner knew "his . . . presence [at the courthouse] was unlawful"; (2) he "remained on [the] property"; (3) "[w]hen notice against . . .

-10-

remaining was given by personal communication from . . . [s]omeone with apparent authority to act for the owner." R., Vol. 1 at 188. The elements for his disorderly conduct conviction were that Mr. Bryner (1) "[r]efused to comply with the lawful order of the police to move from a public place"; or (2) "[i]ntending to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he engaged in fighting or in violent, tumultuous, or threatening behavior." *Id*. at 190.

Mr. Bryner's pro se § 1983 complaint complains his constitutional rights were violated due to an unlawful arrest–ostensibly a claim that the deputies did not have probable cause to arrest him for the offenses on which he was later convicted. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008) (internal quotation marks omitted). In most cases, as noted above, in order to prevail on a Fourth Amendment improper seizure claim by showing a lack of probable cause, a previously-convicted plaintiff does not *necessarily* have to negate an element of the crime for which he was convicted. *Heck*, 512 U.S. at 487 n.7 (citation omitted). But, here, there is no disconnect between the arrest and the crimes for which he was convicted; the crimes for which he was convicted *arose from* his interactions with the deputies that he now challenges. And Mr. Bryner is not arguing that, while he committed the crimes for which he was convicted, the

deputies did not have probable cause to believe that he committed those crimes at the time they arrested and imprisoned him. He is arguing that the deputies did not have probable cause to arrest him for the crimes for which he was convicted because *he did not commit those crimes*. He asserts on appeal that he "never resisted arrest or disobeyed any order, the police were simply abusive and applied force without any verbal instructions." Aplt. Br. at 3. He argued in his amended complaint that "[a]t no time did [Deputy Rowley] say 'leave the court house' or 'leave the room[.]'" R., Vol. 1 at 159. He also stated that he "received no Command from Deputy R[o]wley to obey before he grabbed me forcefully and started shoving me to the door." *Id*. And he argued that "[a]t no time throughout this whole incident did I resist or make any threatening comments or gestures[.]" *Id*. at 160. Thus, Mr. Bryner's arguments seek to undermine the elements of the crimes for which he was arrested and convicted.

B. Should the District Court's Dismissal on *Heck v. Humphrey* Grounds Have Been Without Prejudice?

Mr. Bryner is correct, however, in arguing that claims dismissed on *Heck v. Humphrey* grounds should be dismissed without prejudice. *See Fottler v. United States*, 73 F.3d 1064, 1065 (10th Cir. 1996) ("When a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice."). We thus modify the district court's decision so that the claims dismissed pursuant to *Heck* are dismissed without prejudice.

-12-

## C. Excessive Force

Mr. Bryner's final assertion is that the magistrate judge erred in finding that he failed to present factual allegations sufficient to state a claim for excessive force upon which relief could be granted. He argues that the magistrate judge, whose reasoning and conclusions were adopted by the district court, erred in finding:

> Defendant Rowley could have reasonably perceived during this string of events that Plaintiff was engaging in disorderly conduct in the courthouse and resisting Defendant Rowley's attempts, as a courthouse law enforcement officer, to maintain order by having a member of the general public cooperate with a court employee's (Judge Toomey's clerk's) reasonable instructions. Finally, when Plaintiff pushed back at Defendant Rowley, Defendant Rowley could have reasonably perceived that Plaintiff was resisting and engaging a law enforcement officer with force.

R., Vol. 1 at 208-09. The magistrate judge noted that "Plaintiff has supplied the court with a DVD recording of that day, and it is apparent that Plaintiff is a very large man; thus, Defendant Rowley could have reasonably perceived that he needed to use a lot of his strength and force to handle a man of Plaintiff's size." *Id*. at 209 n.10.

Mr. Bryner argues that the plain language of his pleading alleges that he provided no resistance and asserts that security cameras' video recordings show that the magistrate judge's conclusion is erroneous. We have reviewed the DVD and we disagree. In fact, the DVD undercuts a number of Mr. Bryner's factual allegations. He asserts that as he was trying to date stamp his documents, he "was

-13-

pushed backwards by Deputy R[o]wley who proceeded to verbally berate me for disagreeing with [the judge's clerk]." *Id.* at 159. He asserts that he "received no command from Deputy R[o]wley to obey before he grabbed me forcefully and started shoving me to the door." *Id.* He asserts that he had "to push back to prevent being slammed into the doors [of the Judge's chambers] and to [inform the officers that he had left his papers on the counter]." *Id.* He asserts that the deputies used "significant" force and that he "was lifted on both shoulders and shoved with what appeared to be the full force of the deputies." *Id.* The DVD, however, tells a different story.

Mr. Bryner enters the judge's chambers shortly after the video starts. He is there for approximately sixteen minutes before Deputy Rowley arrives. The second deputy enters shortly thereafter. Although the video does not have sound, it appears that approximately three minutes later, Deputy Rowley and Mr. Bryner begin to talk to each other with the deputy using his finger to point at Mr. Bryner. After a few seconds, Mr. Bryner walks up to, and briefly into, Deputy Rowley's finger, evidently trying to move past him. We take as fact Mr. Bryner's assertion that at this point he was trying to move to the date stamp. But if there was *any* push backwards on the part of Deputy Rowley, it was so light and brief that it is not visible on the video.

Deputy Rowley does continue to jab his finger at Mr. Bryner while talking and then points to the door. He then appears to reach up with his left hand, as if

-14-

he is going to put his hand on Mr. Bryner's back or arm, possibly to lead him toward the door. Mr. Bryner then pulls his arm away from the deputy and takes two or three quick steps backward, apparently to avoid the deputy's touch. Deputy Rowley follows, grabs him by the arm briefly, apparently turning him to face the door, and then puts his hand on his back. While this is happening, the other deputy also steps behind Mr. Bryner and places one of his hands on Mr. Bryner's back. The officers direct Mr. Bryner towards the door. There appears to be some light pushing involved but it also appears that Mr. Bryner is lightly resisting moving toward the door. Mr. Bryner is talking throughout this time and gesturing over his shoulder with his thumb, apparently telling the officers he has left papers on the counter. The officer and Mr. Bryner stop moving toward the door; the officers take their hands off Mr. Bryner as he continues to point towards the counter. Deputy Rowley then returns to the counter, gets Mr. Bryner's papers, hands them to him, and then opens the door for Mr. Bryner and the three leave. Mr. Bryner and the deputies then walk down the hall, go down the elevator, and walk to the metal detectors where, after some more conversation, Mr. Bryner is arrested without struggle. After they leave the judge's chambers, the deputies do not appear to touch Mr. Bryner again until they put him in handcuffs.

Since there is no sound, we must accept Mr. Bryner's allegation that he was verbally berated by Deputy Rowley for not complying with the clerk's request

-15-

that he go to the first floor to file his documents.  But the video clearly shows that

Mr. Bryner was not "shoved with what appeared to be the full force of the

deputies."  *Id*. at 159.  Nor was he in any danger of "being slammed into the

doors" by the deputies.  *Id*.

"When opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for

summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Thus, we must

examine whether the force used, as seen on the video tape, was excessive.

> In determining whether a use of force is reasonable under the Fourth
> Amendment, we balance the nature and quality of the encroachment
> on the individual's Fourth Amendment interests against the
> government's countervailing interests.  But we are mindful:
>
>> Not every push or shove, even if it may later seem unnecessary
>> in the peace of a judge's chambers, violates the Fourth
>> Amendment. And we take seriously that this calculus of
>> reasonableness must embody allowance for the fact that police
>> officers are often forced to make split-second judgments-in
>> circumstances that are tense, uncertain, and rapidly
>> evolving-about the amount of force that is necessary in a
>> particular situation.
>>
>> There are three, non-exclusive factors relevant to an excessive
>> force inquiry:  the severity of the crime at issue, whether the
>> suspect poses an immediate threat to the safety of the officers
>> or others, and whether he is actively resisting arrest or
>> attempting to evade arrest by flight.
>
> *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009)
> (citing *Graham* [*v. Connor*, 490 U.S. 386, 396 (1989)]) (internal
> quotation marks and citations omitted).  Whether a use of force was

reasonable is an objective inquiry, without regard to a police officer's intent or motivation.

*Lundstrom v. Romero*, 616 F.3d 1108, 1126 (10th Cir. 2010) (citations and brackets omitted). Here, the severity of the crime at issue, i.e. Mr. Bryner's initial refusal to leave, was very mild. But the amount of force used was also mild, and was used only (1) when Mr. Bryner initially pulled away from Deputy Rowley and took two or three quick steps backward, and (2) then appeared to lightly resist because he wanted to get his papers. As to the first of these actions, the deputies could not have known whether their safety was in danger when Mr. Bryner quickly pulled away. As to the second, Mr. Bryner was actively, though lightly, resisting the officers attempt to lead him out the door. When the officers realized Mr. Bryner's intent was to retrieve his papers, they retrieved them for him and then they all proceeded downstairs. From the video, no reasonable jury could conclude that the use of force that occurred rose to the level of a constitutional violation.

## III. Conclusion

We affirm the judgment of the district court dismissing the action, but REMAND to the district court to modify the portion of its dismissal based on *Heck v. Humphrey* to be "without prejudice."

Entered for the Court

Michael R. Murphy
Circuit Judge

-17-