**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 27, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

J.H., on behalf of her minor child, J.P.,

     Plaintiff-Appellant,

v.

BERNALILLO COUNTY; J.M.
SHARKEY, Bernalillo County Deputy,

     Defendants-Appellees,

and

CEE KAYE NATION, Principal;
ALISON GONZALES, Teacher,

     Defendants.

No. 14-2068

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:12-CV-00128-JB-LAM)**

---

Joseph P. Kennedy, Kennedy Kennedy & Ives, Albuquerque, New Mexico
(Shannon L. Kennedy and Michael L. Timm, Jr., Kennedy Kennedy & Ives,
Albuquerque, New Mexico, with him on the briefs), for Plaintiff-Appellant.

Luis Robles, Robles, Rael & Anaya, Albuquerque, New Mexico (Taylor S. Rahn,
Robles, Rael & Anaya, Albuquerque, New Mexico, with him on the briefs), for
Defendants-Appellees.

---

Before **BACHARACH**, **EBEL**, and **McHUGH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This appeal grew out of a suit brought on behalf of an 11-year-old girl (identified as "J.P"), who was a student in a class for children with special needs. One day, a deputy sheriff (J.M. Sharkey), who was working as a school resource officer, saw J.P. kick a teacher. Because the kick constituted a crime, Deputy Sharkey arrested J.P., handcuffed her, and transported her to a juvenile detention center.

These actions led J.P.'s mother (identified as "J.H.") to sue Deputy Sharkey and Bernalillo County (Deputy Sharkey's employer) under 42 U.S.C. § 1983, claiming violation of the Fourth Amendment, the Fourteenth Amendment's Due Process Clause, and the Americans with Disabilities Act. The district court dismissed the due process claims and granted summary judgment to Deputy Sharkey and the county on the claims involving the Fourth Amendment and the Americans with Disabilities Act. J.H. appeals.

On the constitutional claims, J.H. contends that Deputy Sharkey lacked probable cause for an arrest and used excessive force by handcuffing J.P. and transporting her to the juvenile detention center. We reject J.H.'s contentions. Deputy Sharkey had probable cause to arrest J.P. after seeing her commit a crime

(battery on a school official) and did not use excessive force. In the absence of a constitutional violation by Deputy Sharkey, Bernalillo County cannot incur liability for failing to train its officers.

We also reject J.H.'s arguments involving the Americans with Disabilities Act. Even if this statute created a cause of action for disabled arrestees, the cause of action would not apply here: Deputy Sharkey observed actual criminal conduct, and there was no evidence that he had information that would cause an officer to reasonably believe that J.P. lacked the necessary scienter. Thus, Deputy Sharkey cannot incur liability under the Americans with Disabilities Act for a wrongful arrest. And Deputy Sharkey cannot incur liability for failing to make a reasonable accommodation because J.P. never asked for an accommodation. As a result, the district court properly awarded summary judgment to the defendants on the claims involving the Americans with Disabilities Act.

## I. The district court properly rejected all of J.H.'s claims against Deputy Sharkey.

J.H. asserted claims against Deputy Sharkey under the federal constitution and the Americans with Disabilities Act. Each claim fails as a matter of law.

### A. Constitutional Claims

The constitutional claims were based on the Fourth and Fourteenth Amendments.

**1. The district court properly rejected J.H.'s Fourth Amendment claims against Deputy Sharkey.**

J.H. alleged that Deputy Sharkey had violated the Fourth Amendment by

1. arresting J.P. without probable cause and

2. using excessive force in handcuffing J.P. and transporting her to the juvenile detention center.

On these claims, the district court awarded summary judgment to Deputy Sharkey based on qualified immunity. We agree with these rulings.

**a. Standard of Appellate Review**

We must consider the claims under our standards for reviewing issues involving summary judgment and qualified immunity. In considering the award of summary judgment, we engage in de novo review. *SRM, Inc. v. Great Am. Ins. Co.*, 798 F.3d 1322, 1326 (10th Cir. 2015). Applying de novo review, we consider the evidence in the light most favorable to J.H. *Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007). But once Deputy Sharkey asserted qualified immunity, the burden shifted to J.H. to show

- the violation of a constitutional right

- that was clearly established at the time of the alleged violation.

*Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

**b. Deputy Sharkey had probable cause to arrest J.P.**

J.H. argues that Deputy Sharkey should not have arrested J.P. This argument is invalid because Deputy Sharkey could lawfully arrest J.P. after

4

observing her kick a teacher, which was a crime under New Mexico law. *See* N.M. Stat. Ann. § 30-3-9(E) (West 2015).

During oral argument, J.H. argued that the crime had not constituted a felony because J.P. was a minor at the time. But J.H. has never denied that the kick constituted an unlawful act.

The existence of probable cause entitled Deputy Sharkey to make an arrest. That power did not depend on classification of the arrestee (adult versus juvenile) or the crime (felony versus misdemeanor); law enforcement officers can arrest minors, as well as adults, even when the crime involves only a misdemeanor. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *see also Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148, 1150 (D.C. Cir. 2004) (holding that the Fourth Amendment was not violated by the arrest of a 12-year-old girl for eating a french fry in a subway station).[1]

---

[1] J.H. did not make this contention in either her opening brief or reply brief. It was too late for J.H. to raise this contention in oral argument. *See Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1510 n.5 (10th Cir. 1997) (stating that it is too late to make a contention for the first time in oral argument). But this contention would not matter anyway because J.P. could be arrested even if her offense constituted a misdemeanor rather than a felony. *See* text accompanying note.

5

In these circumstances, we conclude that Deputy Sharkey did not violate the Fourth Amendment by arresting J.P.

### c. Deputy Sharkey did not use excessive force in applying handcuffs or transporting J.P. to the juvenile detention center.

Once Deputy Sharkey made the arrest, he could restrict J.P.'s freedom of movement by taking her to the juvenile detention center. *See Hedgepeth ex rel. Hedgepeth*, 386 F.3d at 1156 ("The law of this land does not recognize a fundamental right to freedom of movement when there is probable cause for arrest."). And for his own protection, Deputy Sharkey could keep J.P. in handcuffs for the trip to the detention center. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 893-96 (10th Cir. 2009) (holding that the Fourth Amendment was not violated by a law enforcement officer's decision to handcuff an individual suspected of a petty misdemeanor, reasoning that the Supreme Court has "recognized that handcuffing was an appropriate response to officer-safety concerns even during investigative detentions"); *accord Calvi v. Knox Cnty.*, 470 F.3d 422, 428 (1st Cir. 2006) (holding that keeping an arrestee in handcuffs while transporting her to a detention facility, based on standard police practice, did not constitute excessive force).[2]

---

[2]    It is possible for someone to be handcuffed for so long that the handcuffing constitutes an unreasonable use of force. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009) ("[T]he justifiable initial use of handcuffs can become unreasonable if other factors, such as prolonged duration, 'affect the balance of interests under *Graham* [*v. Connor*, 490 U.S. 386 (1989)].'" (quoting

It is true that J.P. was only 11 years old at the time of the arrest. But "[a]n arrestee's age . . . do[es] not necessarily undermine an officer's concern for safety and need to control the situation." *Hawker v. Sandy City Corp.*, 591 F. App'x 669, 675 (10th Cir. 2014).[3]

Notwithstanding Deputy Sharkey's concern for safety, J.H. argues that Deputy Sharkey violated state law by taking J.P. to the juvenile detention center. But state law provided Deputy Sharkey with the option to take J.P. to a detention center rather than release her to her mother's custody. N.M. Stat. Ann. §§ 32A-2-10(A)(1), (A)(3) (West 2015).

This option was not limited by the Fourth Amendment. Under the Fourth Amendment, the threshold issue is whether Deputy Sharkey had probable cause to make an arrest. Because he had probable cause, he could curtail J.P.'s freedom of movement. *See* p. 6, above (quoting *See Hedgepeth ex rel. Hedgepeth v. Wash.*

_____

*Muehler v. Mena*, 544 U.S. 93, 100 (2005))). This possibility is not at issue here. Although J.H. argues that Deputy Sharkey should not have taken J.P. to the juvenile detention center, J.H. does not complain about the length of time that J.P. remained in handcuffs.

[3]     Though *Hawker* is not precedential, we regard the quoted analysis as persuasive. In *Hawker*, we unanimously concluded that the use of force was reasonable when a police officer arrested and performed a twist-lock on a 9-year-old boy suspected of stealing an iPad. *See Hawker*, 591 F. App'x at 671.

J.P.'s crime and the type of force were different: Her crime involved battery on a school official (rather than theft), and the use of force involved only handcuffing (rather than use of a twist-lock). In both cases, however, the law enforcement officer could reasonably consider restraint necessary even though the suspects were only 9 and 11 years old.

*Metro. Area Transit Auth.*, 386 F.3d 1148, 1156 (D.C. Cir. 2004)). As a result, the Fourth Amendment did not require Deputy Sharkey to release J.P. to her mother's custody.

In these circumstances, we conclude that the Fourth Amendment was not violated when Deputy Sharkey handcuffed J.P. and transported her to the juvenile detention center.

**2. The district court properly dismissed J.H.'s due process claims against Deputy Sharkey.**

J.H. sued Deputy Sharkey not only under the Fourth Amendment, but also under the Fourteenth Amendment's Due Process Clause. The district court properly dismissed the Fourteenth Amendment claim because J.H.'s factual allegations did not implicate the Fourteenth Amendment's Due Process Clause.

On this issue, we engage in de novo review. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). In conducting de novo review, we accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of J.H. *Id.*

J.H.'s Fourteenth Amendment claims are identical to her two Fourth Amendment claims: excessive force and unlawful arrest without probable cause. But the Fourteenth Amendment does not support these claims.

We addressed the effect of the Fourteenth Amendment in *Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014), holding that excessive force claims are

8

governed by the Fourth Amendment, rather than the Fourteenth Amendment, when force is used between a warrantless arrest and a probable cause hearing. *Id.* at 419. This holding governs here, for J.H. alleges that Deputy Sharkey arrested J.P. without a warrant and the state courts never provided a hearing on probable cause. Therefore, *Estate of Booker* prevents J.H. from relying on the Fourteenth Amendment for her claim of excessive force.

Nor does the complaint state a valid Fourteenth Amendment claim for unlawful arrest. As we explained in rejecting J.H.'s claim under the Fourth Amendment, Deputy Sharkey had probable cause to arrest J.P. The existence of probable cause precludes recovery for wrongful arrest under the Constitution, regardless of whether the claim is based on the Fourth or Fourteenth Amendment.

### B. Claims Under the Americans with Disabilities Act

The Americans with Disabilities Act forbids discrimination by reason of an individual's disability. Americans with Disabilities Act § 202, 42 U.S.C. § 12132 (2012). In J.H.'s view, Deputy Sharkey discriminated against J.P. by (1) making the arrest based on actions that manifested J.P.'s disability and (2) failing to make reasonable accommodations during the arrest. These claims are invalid as a matter of law. Deputy Sharkey could make the arrest based on probable cause, and there is no evidence indicating that he was aware of a need to accommodate J.P.'s alleged disability.

9

## 1. Deputy Sharkey did not discriminate against J.P.'s disability by making the arrest.

Deputy Sharkey may have violated the Americans with Disabilities Act if he had arrested J.P. "by reason of a disability," but we decline to decide that issue today. *See Gohier v. Enright*, 186 F.3d 1216, 1221 (10th Cir. 1999) (noting that the Tenth Circuit has not decided on the viability of a wrongful-arrest theory under the Americans with Disabilities Act). Even if this theory were viable, it would not apply here: Deputy Sharkey arrested J.P. based on suspicion that she had committed a crime, not based on her disability.

Sometimes a disability might cause the police to incorrectly suspect that an individual committed a crime. *See, e.g.*, *Lewis v. Truitt*, 960 F. Supp. 175, 176-77, 179 (S.D. Ind. 1997) (holding that a genuine issue of material fact existed as to whether plaintiff's arrest for resisting law enforcement had been caused by his disability, which was deafness); *Jackson v. Inhabitants of Sanford*, Civ. No. 94-12-P-H, 1994 WL 589617, at *1, *6 (D. Me. Sept. 23, 1994) (unpublished op.) (denying summary judgment for the defendant police officer on a claim involving discrimination against the disabled when the police officer arrested the plaintiff for driving under the influence after the plaintiff had suffered a stroke).

But that is not the case here. J.P. was in a special needs class, but no one questions her ability to form the intent necessary to commit a battery by kicking her teacher. It was that battery, rather than a disability, that led to the arrest. As a

10

result, the arrest did not constitute discrimination against J.P. based on her alleged disability. *See Roberts v. City of Omaha*, 723 F.3d 966, 973-74 (8th Cir. 2013) (holding that the police did not discriminate under the Americans with Disabilities Act when arresting a man with paranoid schizophrenia who had attacked his family members). In these circumstances, the district court properly granted summary judgment to Deputy Sharkey on this claim.

2. **Deputy Sharkey did not fail to reasonably accommodate J.P.'s alleged disability during the course of her arrest and transportation to the juvenile detention center.**

The Americans with Disabilities Act forbids not only discrimination but also failure to make reasonable accommodations for a disability. Americans with Disabilities Act § 102(b)(5)(A), 42 U.S.C. § 12112(b)(5)(A) (2012). For the sake of argument, we can assume—without deciding—that accommodations may be necessary when disabled individuals are arrested. *See Gohier v. Enright*, 186 F.3d 1216, 1221 (10th Cir. 1999) (noting that the Tenth Circuit has not decided on the viability of a claim based on the Americans with Disabilities Act for failing to accommodate a disability in the course of making an arrest). For example, if a disabled individual uses a wheelchair, courts might require law enforcement officers to secure the wheelchair when making an arrest. *See Gorman v. Bartch*, 152 F.3d 907, 909-10, 913 (8th Cir. 1998).

J.H. claims that J.P. had a learning disability and that Deputy Sharkey failed to make any accommodation while J.P. was in custody. The district court

granted summary judgment to Deputy Sharkey on this claim. We agree with this ruling because J.H. did not provide admissible evidence of (1) a request for an accommodation or (2) a reason for Deputy Sharkey to know about a need for accommodation.

If a police officer incurs a duty to reasonably accommodate a person's disability during an arrest, this duty would have arisen only if Deputy Sharkey had known that J.P. needed an accommodation. *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1196 (10th Cir. 2007) ("Before a public entity can be required under the [Americans with Disabilities Act] to provide a disabled individual an auxiliary aid or service, a public entity must have knowledge of the individual's disability and the individual's need for an accommodation."). J.P. never asked Deputy Sharkey to make an accommodation.

According to J.H., Deputy Sharkey already knew that J.P. had a disability. This argument is unsupported and conflates a disability with a need for accommodation.

J.H. alleges that a former principal told Deputy Sharkey about J.P.'s disability. But the former principal did not testify, and what he allegedly said would constitute inadmissible hearsay. Fed. R. Evid. 801(c), 802. As a result, the former principal's alleged statement could not prevent summary judgment on this issue. *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005)

12

("Hearsay testimony that would not be admissible at trial is not sufficient to defeat a motion for summary judgment.").

J.H. also contends that Deputy Sharkey could have asked about J.P.'s disability. But ask whom? Schools that receive federal funds—like J.P.'s school—cannot disclose education records without written parental consent. Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g(b)(1) (2012). Exceptions exist, but none apply here. *See* Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g(b)(1)(A)-(L) (2012) (declining to afford police officers or school resource officers access to protected records). No party has presented evidence of J.H.'s written consent for Deputy Sharkey to access J.P.'s education records. Without this evidence, a reasonable fact-finder would not have had any basis to believe that Deputy Sharkey had known of J.P.'s disability.

But let's suppose that Deputy Sharkey knew that J.P. had a learning disability.[4] With that knowledge, what accommodation should Deputy Sharkey have made? J.P. never asked for an accommodation; and even now, J.H. does not

---

[4]     A learning disability alone does not necessarily trigger the protections of the Americans with Disabilities Act. *See, e.g.*, *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1107 (9th Cir. 2014) (holding that the plaintiff's attention deficit disorder did not qualify as a disability under the Americans with Disabilities Act); *Whitlock v. Mac-Gray, Inc.*, 345 F.3d 44, 46 (1st Cir. 2003) ("[A] diagnosis [of attention deficit hyperactivity disorder] alone does not establish a disability within the meaning of the [Americans with Disabilities Act].").

tell us what Deputy Sharkey should have done to accommodate J.P.'s learning disorder.

Presumably J.H. believes that Deputy Sharkey should have declined to arrest J.P. and take her to a juvenile detention center. But as noted above, these actions were permissible under state law and the Fourth Amendment. An accommodation may have been necessary in the manner that J.P. was arrested, handcuffed, or transported. But J.P. did not identify a needed accommodation. As a result, Deputy Sharkey did not violate the Americans with Disabilities Act by failing to reasonably accommodate J.P.'s alleged disability.

## II. The district court properly rejected J.H.'s claims against Bernalillo County.

According to J.H., Bernalillo County should have provided better training to Deputy Sharkey, triggering municipal liability under the Fourth Amendment, the Fourteenth Amendment, and the Americans with Disabilities Act. The district court granted the county's motion to dismiss the Fourteenth Amendment claim and the county's motion for summary judgment on the claims involving the Fourth Amendment and the Americans with Disabilities Act. These rulings were correct.

According to J.H., the county failed to properly train Deputy Sharkey. But the county could incur liability for failure to train only if Deputy Sharkey had committed a constitutional or statutory violation. *Ellis ex rel. Estate of Ellis v.*

14

*Ogden City*, 589 F.3d 1099, 1104-05 (10th Cir. 2009). We have already held that Deputy Sharkey did not commit such a violation. As a result, the county could not incur liability for failing to provide adequate training.

## III.  Disposition

We affirm.