**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**October 3, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

BRADLEY WATERS; BRYAN
WATERS, as Co-Personal Representatives
of the Estate of Brent Waters, deceased,

    Plaintiffs - Appellants,

v.

CITY OF ALTUS, OKLAHOMA;
THOMAS HOBBS; JACOB PARSONS,

    Defendants - Appellees,

and

JENNIFER L. HAZLEWOOD,

    Defendant.

No. 24-6264
(D.C. No. 5:23-CV-00235-HE)
(W.D. Okla.)

_____

## ORDER AND JUDGMENT[*]

_____

Before **HOLMES**, Chief Judge, **TYMKOVICH**, and **MORITZ**, Circuit Judges.

_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Brent Waters died in police custody two hours after he was pulled over for a traffic violation. Plaintiffs, Mr. Waters's personal representatives,[1] sued the police officers who arrested him and the city that employed the officers under 42 U.S.C. § 1983 for unlawful arrest, failure to provide medical treatment, and municipal liability. The district court dismissed Plaintiffs' claims, and they appeal. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND[2]

At about 8:00 a.m. on September 13, 2019, Officer Thomas Hobbs stopped Mr. Waters after observing him veer to the side of the road, drive into a curb, and nearly hit a pole. When Officer Hobbs questioned Mr. Waters about the incident, he explained that he was sleep deprived and his windshield was foggy. Officer Jacob Parsons arrived at the scene a few minutes later. Noticing Mr. Waters seemed "off," and that his pupils appeared dilated, Officer Parsons asked him, "Do you have any

---

[1] Plaintiffs are pro se, so we construe their filings liberally. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[2] The following facts are taken from the well-pleaded allegations in Plaintiffs' amended complaint. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). We are unpersuaded by Plaintiffs' argument that the district court erred when it relied solely on the factual allegations in their amended complaint and declined to consider the body camera footage Defendants submitted with their motion to dismiss. *See Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999) (holding that in ruling on a motion to dismiss for failure to state a claim, a district court has *discretion* to consider documents submitted with the motion even if they are referred to in the complaint and central to the plaintiff's claims). The district court explained that it did not need to review the body camera footage because the amended complaint included "extensive" factual allegations based on the body camera footage. R. at 366. This was not an abuse of discretion.

medical condition or anything?" R. at 45. Mr. Waters responded that he just needed to sleep. Officer Parsons then asked him whether he was under the influence of marijuana, and Mr. Waters said, "No. Right now I'm not good to drive. I need to sleep for two or three hours." *Id.* at 46 (emphasis omitted).

Shortly after that exchange, Officer Hobbs asked Mr. Waters to get out of his car. Mr. Waters attempted to comply but had difficulty walking; he stumbled and needed to lean against the side of his car for balance. He "appeared confused and disoriented" as Officer Hobbs questioned him. *Id.* at 47. At one point, Mr. Waters told Officer Hobbs, "My left shoulder is killing me." *Id.* at 48 (emphasis omitted). Officer Hobbs asked him multiple times if he needed emergency medical services ("EMS") and Mr. Waters refused each time, explaining that he just needed to sleep.

A few minutes later, Officer Parsons conducted standard field sobriety tests. As Mr. Waters struggled to complete the "walk and turn" test, Officer Parsons asked, "You sure you don't need EMS?" *Id.* at 51 (emphasis omitted). He again responded, "I just need to sleep." *Id.* Mr. Waters was unable to complete the test and the officers arrested him. While Officer Hobbs handcuffed Mr. Waters, he asked, "Do you have a shoulder injury or anything?" *Id.* at 52. Mr. Waters responded, "My left shoulder hurts." *Id.* (emphasis omitted).

Officer Parsons drove him to the hospital, where his blood was taken and tested for drugs and alcohol. Before the test results were available, Mr. Waters was taken to jail and, at 9:15 a.m., he was placed in an interrogation room with a drug recognition expert ("DRE"). A minute later, he collapsed. The DRE quickly

3

administered chest compressions; EMS personnel took over several minutes later and brought him back to the hospital, but Mr. Waters could not be revived. He was pronounced dead at 10:05 a.m.

The blood test revealed, and the autopsy later confirmed, that Mr. Waters was not under the influence of drugs or alcohol. His cause of death was "atherosclerosis of the left main artery" (a blockage consistent with cardiac arrest), and "[h]yperglycemia" (high blood sugar) was "[an]other significant cause." *Id.* at 66.

In March 2023, Plaintiffs sued Officers Hobbs, Officer Parsons, and the City of Altus, Oklahoma.[3] They asserted § 1983 claims alleging that the officers unlawfully arrested Mr. Waters and denied him medical treatment, in violation of his Fourth and Fourteenth Amendment rights. Based on the same facts, Plaintiffs sued the City of Altus for alleged failure to properly train and supervise the officers. Defendants moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) based on qualified immunity. The district court granted the motion and dismissed the case, reasoning that Plaintiffs failed to plausibly allege the officers violated Mr. Waters's constitutional rights. Plaintiffs appeal.

## II.  DISCUSSION

We review de novo a dismissal under Rule 12(b)(6) based on qualified immunity. *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021). Under this

---

[3] Plaintiffs also sued Jennifer Hazlewood, a nurse at the Jackson County Memorial Hospital. The claims against Ms. Hazlewood are not at issue because this court granted Plaintiffs' unopposed motion to dismiss her from this appeal on January 27, 2025.

standard, we accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff. *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Asserting the affirmative defense of qualified immunity "creates a presumption that the defendant is immune from suit." *Truman*, 1 F.4th at 1235 (internal quotation marks omitted). To overcome this presumption, the plaintiff must plausibly allege that (1) the defendant's actions violated a constitutional right, and (2) the right was clearly established when the violation occurred. *Id.*

### A. Unlawful Arrest

"Under the Fourth Amendment, a warrantless arrest requires probable cause." *Donahue v. Wihongi*, 948 F.3d 1177, 1189 (10th Cir. 2020). Probable cause exists "if the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id.* (internal quotation marks omitted).

Here, the district court determined that Plaintiffs failed to plausibly allege a constitutional violation because "the alleged facts make it clear that the officers had probable cause to arrest Mr. Waters for driving under the influence." R. at 369. We agree. According to the amended complaint, Officer Hobbs stopped Mr. Waters after observing him drive into a curb and nearly hit a pole, and during the traffic stop,

5

Mr. Waters: seemed confused and disoriented, appeared to have dilated pupils, struggled to walk, stumbled, needed to lean against his car for balance, was unable to complete a standard field sobriety test, and denied being intoxicated but admitted he was "not good to drive." *Id.* at 46 (emphasis omitted). These circumstances created sufficient probable cause to support the officers' decision to arrest Mr. Waters. We therefore affirm the district court's dismissal of Plaintiffs' unlawful-arrest claim. *See J.H. ex rel. J.P. v. Bernalillo Cnty.*, 806 F.3d 1255, 1260 (10th Cir. 2015) ("The existence of probable cause precludes recovery for wrongful arrest under the Constitution.").

### B. Failure to Provide Medical Treatment

"The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care that the Eighth Amendment requires for convicted inmates." *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021). To state a plausible claim, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (internal quotation marks omitted). This standard has both an objective and a subjective component. *Id.*

To satisfy the objective component, the plaintiff must show that the detainee's "medical need was sufficiently serious." *Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1262 (10th Cir. 2022) (internal quotation marks omitted). A medical need is sufficiently serious if it "has been diagnosed by a physician as mandating treatment"

6

or if it "is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted).

For the subjective component, the plaintiff must establish that "the defendants knew the detainee faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1029 (10th Cir. 2020) (brackets and internal quotation marks omitted). Actual knowledge is required: the defendant "must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Id.* (internal quotation marks omitted).

The district court concluded Plaintiffs failed to plausibly allege a constitutional violation because the alleged facts did not satisfy either component of the deliberate-indifference standard. Plaintiffs argue that Mr. Waters's death was sufficiently serious to satisfy the objective component. We agree. *See Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1045 (10th Cir. 2022) (concluding detainee's "ultimate harm of death was sufficiently serious for purposes of the objective component of deliberate indifference"); *Burke v. Regalado*, 935 F.3d 960, 994 (10th Cir 2019) (same). We next consider whether Plaintiffs plausibly alleged that Officer Hobbs or Officer Parsons knew Mr. Waters faced a substantial risk of serious harm and disregarded that risk.

The amended complaint alleges that Mr. Waters said he needed to sleep when Officer Parsons asked if he had a medical condition. It also alleges that Mr. Waters

7

said he just needed to sleep each time the officers asked if he needed EMS, including when Officer Hobbs asked after he mentioned his left shoulder pain. Plaintiffs seem to argue it was obvious that Mr. Waters faced a substantial risk of serious harm and therefore the officers should have called EMS despite what Mr. Waters said.

Knowledge of a substantial risk of harm may be inferred if the risk would be "obvious to the so-called reasonable man." *Quintana*, 973 F.3d 1029 (internal quotation marks omitted). For example, "we have held that characteristics common to many intoxicated individuals do not present an obvious risk," but "unconsciousness" presents an "obvious risk." *Id.* (ellipsis and internal quotation marks omitted).

According to the amended complaint, the officers believed marijuana usage caused Mr. Waters's symptoms (confusion, disorientation, dilated pupils, difficulty balancing, difficulty walking, and fatigue), which, in turn caused the traffic violation and failed field sobriety test. Even though the blood test and autopsy later revealed that Mr. Waters was not intoxicated, the symptoms mentioned above "do not present an obvious risk" because they are "common to many intoxicated individuals." *Id.* (internal quotation marks omitted). Shoulder pain, which Mr. Waters complained of twice to Officer Hobbs, is not a common symptom of intoxication, but we are unpersuaded that shoulder pain presents the kind of substantial risk of serious harm that would be obvious to a reasonable person.

On the other hand, unconsciousness does present an obvious risk. *See id.* The amended complaint alleges that when Mr. Waters collapsed in the interrogation

8

room, the DRE started chest compressions and "Officer Hobbs suggested that EM[S] be called to the scene to Mr. Waters." R. at 63. When EMS personnel arrived minutes later, Officer Hobbs told them that Mr. Waters did not complete the field sobriety test and that he had fallen asleep in the patrol car and in the interrogation room. Plaintiffs seem to suggest that Mr. Waters may have fallen unconscious in the back of the patrol car, but they do not plausibly allege that either officer *knew* Mr. Waters was unconscious at any point before he collapsed in the interrogation room. Moreover, the amended complaint does not plausibly allege that either officer failed to take reasonable measures after Mr. Waters collapsed in the interrogation room—he received chest compressions and EMS was called.

In sum, Plaintiffs failed to plausibly allege that Officer Hobbs or Officer Parsons knew Mr. Waters faced a substantial risk of death or cardiac arrest. And although unconsciousness presents an obvious risk of serious harm, Plaintiffs failed to plausibly allege that Officer Parsons or Officer Hobbs acted with deliberate indifference when Mr. Waters collapsed. Because Plaintiffs did not satisfy deliberate-indifference standard's subjective component, they failed to plausibly allege a constitutional violation. We therefore affirm the district court's dismissal of their medical-treatment claim.

## C. Municipal Liability

Under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), "a municipality is a 'person' subject to § 1983 liability." *Burke*, 935 F.3d at 998 (internal quotation marks omitted). Municipal liability requires an underlying constitutional violation.

*Id.* "A core principle of *Monell* liability is that municipal entities are liable for only their own actions and not vicariously liable for the actions of their employees." *Crowson v. Washington Cnty.*, 983 F.3d 1166, 1191 (10th Cir. 2020). But "[b]ecause municipalities act through officers, ordinarily there will be a municipal violation only where an individual officer commits a constitutional violation." *Id.* To state a plausible *Monell* claim, a plaintiff must allege: (1) a municipal policy or custom; (2) caused a constitutional violation; and (3) the municipality was deliberately indifferent to the constitutional violation. *Id.* at 1184.

The district court determined Plaintiffs' amended complaint fell short on the municipal liability claim because it failed to allege facts plausibly showing that Officer Hobbs or Officer Parsons committed a constitutional violation. As discussed above, we agree. Thus, because municipal liability requires an underlying constitutional violation and Plaintiffs failed to plausibly allege one, we affirm the district court's dismissal of their claims against the City of Altus.

### III.  CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

10